845 So.2d 471 (2003)
Saleh IBRAHIM and Samar Ibrahim (Individually and on Behalf of Their Minor Children, Mohammad Ibrahim, Ayah Ibrahim, and Habiba Ibrahim)
v.
Corey Leigh HAWKINS and State Farm Mutual Automobile Insurance Company.
No. 2002 CA 0350.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*474 Locke Meredith, Baton Rouge, for Plaintiffs-Appellees-Appellants Saleh Ibrahim, et al.
Robert J. Burns, Jr., Atkinson, Perry, Atkinson & Balhoff, L.L.C., Baton Rouge, for Defendant-Appellant-Appellee Allstate Indemnity Company.
Before: PARRO, McDONALD, CLAIBORNE,[1] JJ.
PARRO, J.
Allstate Indemnity Company (Allstate), which provided uninsured/underinsured motorist (UM) insurance coverage to Saleh Ibrahim, appeals a judgment finding it was arbitrary and capricious in its handling of his claim and imposing statutory penalties and attorney fees. Ibrahim answered the appeal, seeking additional attorney fees and legal interest. We amend and, as amended, affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Ibrahim was injured in an automobile accident on February 4, 1999. On January *475 28, 2000, suit was filed against the driver of the other vehicle, Corey Leigh Hawkins, and his liability insurer, State Farm Mutual Automobile Insurance Company (State Farm). In a supplemental petition filed August 1, 2000, Ibrahim added his UM carrier, Allstate, claiming Hawkins was underinsured and seeking payment under his UM policy. Ibrahim claimed he had provided Allstate sufficient proof of loss, but it had arbitrarily, capriciously, and without probable cause refused to timely tender a reasonable amount under the UM coverage. He sought penalties and attorney fees from Allstate, pursuant to Louisiana Revised Statutes 22:658 and 22:1220.
Ibrahim's policy with Allstate provided UM limits of $50,000 and medical payments coverage of $5,000; it was not an "economic-only" policy.[2] Ibrahim's most significant injuries were a broken rib and a right shoulder injury that eventually required arthroscopic surgery; he also lost time at work and underwent physical and psychological therapy. During the course of Ibrahim's medical treatments, Allstate tendered its $5,000 med-pay limit and eventually tendered another $29,569 in UM payments. State Farm paid its policy limits of $25,000, and the claims against it and Hawkins were dismissed. The case went to trial against Allstate for additional UM payments, penalties, and attorney fees.
After trial, the court found Ibrahim had proven damages considerably in excess of his UM policy limits, as follows:

Past Medical Expenses $ 31,750.22
Past Lost Wages 22,400.00
General Damages of Saleh Ibrahim
 Mental Anguish and Distress 10,000.00
 Shoulder 50,000.00
 Fractured Rib 10,000.00
 Soft Tissue: 5,000.00
Loss of Consortium for Samar Ibrahim 5,000.00
Loss of Consortium for Children[3] 5,000.00
 ____________
 TOTAL $ 139,150.22

The court further found that this amount was subject to the following credits:

State Farm Liability Limits 25,000.00
Allstate Med-Pay Tender made 4/24/00 5,000.00
Allstate UM Tender made 9/26/00 19,608.00
Allstate UM Tender made 3/09/01 9,961.00
 ____________
 TOTAL CREDITS $ 59,569.00

The judgment ordered Allstate to pay *476 Ibrahim $20,431, that being the remaining balance under its UM policy limits after deducting the above credits. The court also imposed penalties and attorney fees on Allstate, as follows:

Penalties $ 40,862.00
Attorney Fees (1/3 of net judgment, $79,581.22) 26,527.07
 ____________
 TOTAL $ 67,389.07

The judgment further awarded legal interest on "said judgment" from the date of judicial demand, January 28, 2000, until paid; legal interest on the penalties and attorney fees from the date of the signed judgment, October 11, 2001; and all court costs.
In this appeal, Allstate claims the court erred in finding it was arbitrary and capricious, in assessing statutory penalties, and in calculating attorney fees. Ibrahim answered the appeal, seeking additional attorney fees and court costs for the defense of the appeal, plus legal interest from date of judicial demand on the total proven damages in the amount of $139,150.22 until the time the full UM policy limits are paid.

APPLICABLE LAW
Louisiana Revised Statute 22:658 mandates the imposition of penalties and attorney fees when an insurer fails to pay its insured in accord with the statutory provisions. It provides, in pertinent part, as follows:
A. (1) All insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured,... together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
Louisiana Revised Statute 22:658 is a penal statute; as such, it must be strictly construed. Vaughn v. Franklin, 00-0291 (La.App. 1st Cir.3/28/01), 785 So.2d 79, 91, writ denied, 01-1551 (La.10/5/01), 798 So.2d 969. It subjects an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount within thirty days of satisfactory proof of loss, to the mandatory imposition of penalties and attorney fees for the collection of such amount. See Calogero v. Safeway Ins. Co. of Louisiana, 99-1625 (La.1/19/00), 753 So.2d 170, 174. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. To establish a "satisfactory proof of loss," the insured must show that the insurer received sufficient facts to fully apprise the insurer (1) that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; and (3) that such fault gave rise to damages. *477 The information must also indicate the extent of those damages. See McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La.1985); Fontana v. Louisiana Sheriffs' Auto. Risk Program, 96-2752 (La.App. 1st Cir.6/20/97), 697 So.2d 1037, 1039. When satisfactory proof of loss has been made and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount that is due. McDill, 475 So.2d at 1091. This amount must be tendered unconditionally, not in settlement of the case, but to show good faith and the insurer's compliance with its contractual duties. The amount due is that amount over which reasonable minds could not differ. McDill, 475 So.2d at 1091-92.
In determining an award of attorney fees to be assessed under LSA-R.S. 22:658, the trial court should consider the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and difficulty of the questions involved, and the percentage fixed for attorney fees in the plaintiff's contract. Khaled v. Windham, 94-2171 (La.App. 1st Cir.6/23/95), 657 So.2d 672, 680, writ dismissed, 95-1914 (La.11/1/95), 661 So.2d 1369. The trial court must base its award of attorney fees on the attorney's efforts expended for "the prosecution and collection of the loss, that being the amount of any claim due the insured, rather than on the total recovery awarded. See Desoto v. Balbeisi, 02-0169 (La.App. 1st Cir.12/20/02), 837 So.2d 48, 52. The trial court's conclusion with respect to the assessment of penalties and attorney fees is, in part, a factual determination and should not be disturbed in the absence of a finding that it was manifestly erroneous. Bauer v. White, 532 So.2d 506, 509 (La. App. 1st Cir.1988).
Another statute allowing a court to impose penalties for an insurer's failure to deal with its insured in good faith is LSA-R.S. 22:1220, which states, in pertinent part:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * *
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.
Under this statute, when an insurer is found to have acted arbitrarily, capriciously, or without probable cause, the insurer shall be liable for damages sustained as a result of the breach, and may be assessed penalties not to exceed two times the damages sustained or five thousand dollars, whichever is greater. LSA-R.S. *478 22:1220(A) and (C); see Calogero, 753 So.2d at 173.
There is a close relationship between the conduct described in LSA-R.S. 22:658(B)(1) and the conduct described in LSA-R.S. 22:1220(B)(5). See Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 192 n. 14. In fact, the conduct is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. The primary difference is that under LSA-R.S. 22:658(A)(1) and (B)(1), the insurer must pay the claim within 30 days of receiving satisfactory proof of loss, rather than the longer 60-day period allowed under LSA-R.S. 22:1220(B)(5). See Calogero, 753 So.2d at 174. Where LSA-R.S. 22:1220 provides the greater penalty, it supersedes LSA-R.S. 22:658, such that the insured cannot recover penalties under both statutes. However, because LSA-R.S. 22:1220 does not provide for attorney fees, the insured is entitled to recover the greater penalties under its provisions and attorney fees under LSA-R.S. 22:658 for its insurer's arbitrary or capricious failure to timely pay his claim after receiving satisfactory proof of loss. See Calogero, 753 So.2d at 174.
If an appellee appropriately requests an increase in attorney fees for the appeal, they are usually awarded, provided the appellant obtains no relief and the appeal has necessitated additional work on the part of appellee's counsel. See Loup v. Louisiana State School for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 694.

ANALYSIS
The parties stipulated that Allstate was entitled to credit for the $25,000 State Farm payment of its liability limits and the $5,000 med-pay and $29,569 UM payments tendered by Allstate on September 26, 2000, and March 9, 2001.[4] Allstate does not contest the amount of the damages found by the trial court, but contends the court erred in finding its handling of Ibrahim's claim was arbitrary and capricious and in its computations of statutory penalties and attorney fees.

Arbitrary and Capricious
The evaluation of Allstate's handling of Ibrahim's claim is based on the timeliness and reasonableness of its actions. Therefore, the key facts relate to what it knew about his injuries and treatments, when it became aware of that information, and how it responded.
The accident occurred February 4, 1999; Ibrahim was treated immediately at a hospital emergency room and sought followup treatment within a week from his personal physician, Dr. Donald Fonte, for continued pain in his neck, lower back, knee, chest, and right shoulder. An MRI at the end of February showed right shoulder impingement; an x-ray in late March showed a fracture of the 10th rib. Conservative treatment, including steroid injections, pain medications, and physical therapy, did not relieve his shoulder pain and limitation of motion, although his other problems resolved after several months. In July, Dr. Fonte referred Ibrahim to an orthopedist, Dr. Mark Field, who concluded that arthroscopic surgery on the right shoulder would be needed. He referred Ibrahim for additional physical therapy and, as of October 19, 1999, limited him to *479 light duty work requiring only one arm and with no mechanical lifting. All of this information is in Dr. Fonte's and Dr. Field's medical records.
Suit was filed January 28, 2000. On March 28, 2000, Ibrahim's attorney sent a letter to Allstate with copies of Dr. Fonte's and Dr. Field's medical records and invoices for $6,386.72 in medical bills, plus Ibrahim's employer's verification of lost wages in the amount of $11,900. The letter outlined the treatments Ibrahim had received, described the recommended arthroscopic surgery, summarized the general damages and loss of consortium claims, and requested payment of the full UM policy limits. In a letter dated April 21, 2000, Allstate tendered its med-pay limit of $5,000 and stated, "we feel no UM tender is in order." At trial, Allstate's claims adjuster, Shirley Williams, testified that she gave no consideration to the loss of consortium claim and limited the lost wage claim to $5,250, which represented only the wages lost during the 15 weeks Dr. Fonte's notes specifically stated Ibrahim could not work at all. Although the employer's verification described Ibrahim's job duties as "cashier, stock man, manager, janitor," she did not correlate the work limitations imposed by Dr. Field with the employer's verification that Ibrahim had not worked from the accident date through June 1999, and had only worked 20 hours per week from August 1999 through February 2000.[5] In fact, she never did any further investigation of his wage loss claim. Allstate's claim file has a computerized assessment for general damages dated April 21, 2000; that print-out shows nothing for wage loss incurred or expected and nothing for expected medical specials, although both doctors were still treating Ibrahim. Ms. Williams testified that she provided the information for the computer assessment.
On August 10, 2000, Ibrahim's attorney provided Allstate with a copy of the declarations page of the State Farm liability insurance policy covering Hawkins, a receipt and release showing State Farm had paid its policy limits of $25,000, and an affidavit from Hawkins stating he had no other liability insurance coverage. The letter again requested payment of the UM limits. On August 17, 2000, Ms. Williams requested additional medical records and stated, "Based on the records we have to date, we feel there is no UM exposure." On August 31, 2000, Ibrahim's attorney sent Allstate two letters. One enclosed a copy of the supplemental and amending petition that had been filed August 1, 2000, asserting Ibrahim's claim against Allstate. The second enclosed the medical records of Dr. Alan C. Farries, an orthopedist from whom Ibrahim had sought a second opinion; Dr. Farries confirmed the recommendation for arthroscopic surgery. The letter also included an estimate from Dr. Field that his fee and an assistant surgeon's fee for arthroscopic surgery would be $7,558. Upon receipt of this information, the computerized assessment was updated, and on September 22, 2000, Allstate tendered $19,608 to Ibrahim. Ms. Williams testified that this reflected the wage loss of $5,250, medical bills in the file of $6,800, the estimated surgeon's fee of $7,558, and general damages of $30,000. From this $49,608 estimate of Ibrahim's total damages, she deducted State Farm's $25,000 payment and Allstate's $5,000 *480 med-pay payment, leaving $19,608. She acknowledged that she made no effort to estimate or include the anesthesiology or hospitalization costs that would necessarily accompany the surgical procedure. She also made no further adjustment for expected wage loss and did not increase the general damage estimate to reflect the anticipated surgery.
Ibrahim had the arthroscopic surgery on November 29, 2000. On January 31, 2001, Ibrahim's attorney sent a letter to Allstate's attorney, enclosing copies of updated medical records and invoices from Dr. Field reflecting the surgery and follow-up medical treatment, including ongoing physical therapy. This letter suggested that increased medical expenses and additional lost wages due to the surgery justified payment of the full UM limits. It was forwarded to Allstate on February 14, and on March 3, 2001, Allstate tendered $9,961. Ms. Williams explained that this payment reflected an increase in general damages to $40,000, plus $14,319 for medical bills and $5,250 for lost wages, for a total of $59,569. After deducting the payments previously made by Allstate and State Farm, the balance was $9,961. Again, there was no increase in the wage loss estimate and nothing for loss of consortium or continuing treatment.
Before going to trial, Ibrahim's attorney continued to provide additional information to Allstate. On April 9, 2001, he forwarded copies of additional medical records and bills incurred by Ibrahim; the paid medical expenses by this time totaled $21,845.60. In May, he forwarded treatment notes from Dr. Ashwin Sura, a psychiatrist who had treated Ibrahim for nervousness and depression from March 2000 through March 2001. Dr. Sura's notes from Ibrahim's first visit indicate the history of his present illness was:
Accident 1 year ago"car"he was drivingtruck got in front of him. Froze up[;] gave him bags to breathe. He is changedgets upset over little thingsirritablenightmares @ nightarm is painfull (sic)afraid to drivewakes up in night hollersfeels nervous all the time.
At the trial, Ms. Williams said she did not give any consideration to Dr. Sura's treatment or the cost of the medications she prescribed for Ibrahim, because the doctor's notes did not specifically say his mental condition was related to the accident. No additional tender was forthcoming from Allstate before the trial.
In oral reasons for judgment, the trial court stated its conclusions concerning Allstate's handling of Ibrahim's claim for UM benefits under his policy, as follows:
The court is extremely concerned that in the first tender the insurer was aware of the necessity of further surgery, and in fact even included a surgeon's cost, anticipated surgeon's cost therein, but did not increase the general damages associated with that, nor did they provide any amounts for the hospital or anesthetist fee. In providing the surgeon's cost they basically admitted that they understood and knew that the surgery was required. Failure to provide consideration for the other matters, the increased general damages, the hospital fees and anesthetist's fees was arbitrary and capricious on behalf of the insurer. No reasonable person could come to that decision without willfully attempting to deny the claim that proof of which had been presented to them. There was no consideration given as to any lost or reduced wages after May 24th of 1999. Upon examination by the plaintiff's counsel, it was definitively established that the $5,250.00 lost wages was only for the February 4, '99 through May *481 24, '99 period. Having recognized the need for surgery and failed to provide consideration for lost wages associated with the surgery, that was arbitrary and capricious on behalf of the insurer. Also with regard to the psychiatrist's costs, having already found that they are attributable to this matter, the documentation from the psychiatrist, I don't think any reasonable person could read that and not relate it directly to this accident. The notes are very clear. The doctor's notes are very clear. So failure to consider that, or give consideration to that in tendering is arbitrary and capricious....
Having reviewed the record, we conclude there was evidentiary support for the trial court's findings. Although all payments were made within thirty days from receipt of information, Allstate's estimates conveniently overlooked portions of that information, resulting in unreasonably low payments at each juncture. Moreover, despite receiving additional information regarding psychiatric treatment after its last tender, Allstate made no effort to adjust either its medical specials or general damages to account for Ibrahim's mental problems that were clearly attributable to the accident. Finally, throughout the evaluation process, Allstate totally ignored the claims of Ibrahim's wife and children. Accordingly, we find no manifest error in the trial court's conclusion that Allstate was arbitrary and capricious in its handling of Ibrahim's claim.

Penalties
The trial court imposed a penalty of twice the amount it found was owed to Ibrahim under the UM provisions of the Allstate policy after deducting all applicable credits. Allstate argues that under LSA-R.S. 22:658, this is clearly excessive, because that statute limits the penalty to 10% of the difference between the amount paid or tendered and the amount found to be due, which it suggests is $2,043.10. However, it is obvious that the court did not apply this statute, but looked to the provisions of LSA-R.S. 22:1220 in imposing this penalty. The allowable penalty under LSA-R.S. 22:1220 is two times the damages sustained as a result of the breach of specified duties or five thousand dollars, whichever is greater. Under the jurisprudence, where its provisions provide the greater penalty, it supersedes LSA-R.S. 22:658. See Calogero, 753 So.2d at 174.
However, Allstate further argues that there was no showing of actual damages resulting from Allstate's breach of its duties, which is required in order to award penalties under LSA-R.S. 22:1220. We note that this court has consistently held that the penalty provision of LSA-R.S. 22:1220 is applicable only after a showing is made of actual damages resulting from the breach of the insurer's duties. See Champagne v. Hartford Cas. Ins. Group, 607 So.2d 752, 758 (La.App. 1st Cir.1992); Khaled, 657 So.2d at 679-680; Graves v. Businelle Towing Corp., 95-1999 (La.App. 1st Cir.4/30/96), 673 So.2d 311, 314-15; Carter v. Davis, 95-2198 (La.App. 1st Cir.5/10/96), 673 So.2d 362, 364-65, writ denied, 96-1449 (La.6/27/97), 696 So.2d 991; Reed v. Recard, 97-2250 (La.App. 1st Cir.11/18/98), 744 So.2d 13, 19, writ denied, 98-3070 (La.2/12/99), 738 So.2d 572; The Sultana Corp. v. Jewelers Mut. Ins. Co., 01-2059 (La.App. 1st Cir.12/31/02), 837 So.2d 134, 136.
Ibrahim argues that even if there were no actual proven damages, this court should still award $5,000 per claimant under the penalty provision. This was the approach taken by the federal district court applying Louisiana law in Estate of Robichaux v. Jackson Nat'l Life Ins. Co., 821 F.Supp. 429, 431 (E.D.La.1993), and *482 the federal appellate court in In Matter of Hannover Corp. of America, 67 F.3d 70 (5th Cir.1995). It is also the interpretation followed by the Louisiana courts of appeal for the third, fourth, and fifth circuits. See Hall v. State Farm Mut. Auto. Ins. Co., 94-867 (La.App. 3rd Cir.5/31/95), 658 So.2d 204, 208; McClendon v. Economy Fire & Cas. Ins., Co., 98-1537 (La.App. 3rd Cir.4/7/99), 732 So.2d 727, 731; Rogers v. Commercial Union Ins. Co., 01-0443 (La.App. 3rd Cir.10/3/01), 796 So.2d 862, 869; Reed v. State Farm Mut. Auto. Ins. Co., 02-804 (La.App. 3rd Cir. 12/11/02), 832 So.2d 1132, 1135; Brinston v. Automotive Cas. Ins. Co., 96-1982 (La.App. 4th Cir.12/3/97), 703 So.2d 813, 817; and Genusa v. Robert, 98-449 (La.App. 5th Cir.10/14/98), 720 So.2d 166, 173. A move toward this approach has also been suggested in a dissenting opinion of this court. See The Sultana Corp., 837 So.2d at 137 (Fogg, J., dissenting)(suggesting that although the insured did not prove the actual amount of damages sustained due to the insurer's breach of its duty, the evidence showed there were actual damages and therefore, the $5,000 penalty provision should have been applied).
Ibrahim's suggestion that we award $5,000 per claimant even if actual damages were not proved has been specifically considered and rejected by this court. In the Carter case, the sole issue presented on appeal was whether the trial court erred in awarding $5,000 in penalties for bad faith settlement practices under LSA-R.S. 22:1220. Carter, 673 So.2d at 363. In reversing the trial court's penalty award, this court reasoned:
[W]e believe that the plain language of the statute dictates this result. A court's interpretation of a law should reflect the meaning the lawmaker intended. Furthermore, it is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The penalty provision clearly states, "[I]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties...." (Emphasis supplied.) Giving meaning to each word of the statute, we believe that the lawmakers intended the penalty provisions in Section C of the statute to apply only in circumstances where the claimant has proven his entitlement to general or special damages.
It is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault, and to support an award there must be evidence in the record. The record herein reveals no evidence of damages suffered by the plaintiff as a result of the defendant's conduct. Under these circumstances the trial court erred in awarding plaintiffs penalties under LSA-R.S. 22:1220.
Carter, 673 So.2d at 364-65 (citations omitted); see also The Sultana Corp., 837 So.2d at 135-36. Therefore, until the Louisiana Supreme Court addresses and resolves this split in the decisions of the appellate courts of this state, we must follow the jurisprudence from this circuit that does not allow any penalty under LSA-R.S. 22:1220 unless the insured has proven damages were suffered as a direct result of the insurance company's conduct. See Graves, 673 So.2d at 315. The evidence in this case does not establish such damages. Therefore, the trial court's award of penalties in the amount of $40,862 under the provisions of LSA-R.S. 22:1220 was legal error and cannot be maintained.
However, a penalty award pursuant to LSA-R.S. 22:658 is appropriate; *483 Allstate has computed this as $2,043.10, which is 10% of the remaining amount within Allstate's policy limits after deducting the payments already made by it and State Farm. In considering whether this is a correct computation, we have examined the current and past versions of LSA-R.S. 22:658 and the jurisprudence interpreting it. When the insurer has made partial payments toward its obligation, the statute calls for a penalty of "ten percent of the difference between the amount paid or tendered and the amount found to be due...." This language has remained consistent through several amendments. In Malbrough v. Wallace, 594 So.2d 428, 437 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992), this court defined the "amount found to be due" as plaintiff's total damages less the liability insurer's policy limits.[6] However, that case was decided before the amendment of LSA-R.S. 22:658 in 1992. See 1992 La. Acts, No. 879, § 1. Before that amendment, the applicable penalty in Malbrough for the arbitrary or capricious failure to make any payment to the insured within thirty days after receipt of satisfactory proof of loss was, in addition to the amount of the loss, "ten percent damages on the total amount of the loss ...." (emphasis added). The 1992 amendment modified this portion of the penalty to state that, in addition to the amount of the loss, the penalty would be "ten percent damages on the amount found to be due from the insurer to the insured ...." (emphasis added). This amendment clarified that ten percent of "the amount found to be due from the insurer to the insured," rather than ten percent of "the total amount of the loss," was the maximum penalty that could be imposed on an insurer for its failure to make any payment in accordance with the statutory requirements. Reading this amended provision in pari materia with the penalty provision for the situation in which a partial payment has been made, we conclude that "the amount found to be due" can no longer be measured by the total damages minus the liability insurance payment, as in Malbrough.[7] Under the then-applicable version of the statute, that computation was correctly based on the total amount of the loss, which mirrored the first portion of the penalty provision at that time. Under the current version, however, we conclude that "the amount found to be due" must mirror the amended first portion of the penalty provision and be based on the amount that is ultimately found to be owed by the insurer to the insured.
In this case, after considering the Allstate policy limits and deducting all payments made by it and State Farm, the "amount found to be due" by the trial court was $20,431. Basing the ten percent penalty on this amount, Allstate is thus liable to Ibrahim for a penalty of $2,043.10.

Attorney Fees
The trial court awarded attorney fees in the amount of $26,527.07, which represented one-third of the net judgment of $79,581.22. The court stated that this award was based on the contingency fee contract showing a one-third fee, which the court found "to be a reasonable and traditional fee for this type of matter." Allstate contends the trial court erred in *484 awarding attorney fees that are out of proportion to the amount of the statutorily permissible award and cannot fairly be attributed to "the prosecution and collection of such amount," as the statute requires.
Having reduced the penalty award, we must re-evaluate the attorney fee award using the factors set out in the jurisprudence. See Degruise v. Houma Courier Newspaper Corp., 95-1863 (La.11/25/96), 683 So.2d 689, 694-95. The award must be based on the attorney's efforts expended for the prosecution and collection of the claim against the insurer and the penalty due to the insured, taking into consideration the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the novelty and difficulty of the questions involved, and the percentage fixed for attorney fees in the plaintiff's contract. See Desoto, 837 So.2d at 51-52.
The record in this case indicates that State Farm's liability was established from the outset. The accident report is one of the first items in the Allstate claim file; it shows Hawkins caused the accident by turning left directly in front of Ibrahim, leaving him no opportunity to avoid the collision. The claim file also reflects Allstate knew the State Farm policy had a $25,000 liability limit. Therefore, Allstate knew that its insured had no liability and that State Farm's contribution would be limited to $25,000. By August 2, 2000, State Farm had paid its policy limits and was released from the litigation. The only pleadings in the record before that date are the petition, State Farm's answer, and the supplemental and amending petition naming Allstate as an additional defendant. Based on the record, including the correspondence and documents in Allstate's claim file, it is clear that virtually all of the work done by Ibrahim's attorney in this case was expended to recover the UM payments that were contractually owed to his client. There was nothing novel or unusual about the factual or legal basis of the claim, just an inordinate amount of time and effort to obtain what Allstate should have paid its insured. Dr. Field was deposed twice, once in October 2000 and again after the surgery in May 2001; additional discovery was propounded in preparation for trial when Allstate failed to make any additional tender after receipt of Dr. Sura's reports. The record reflects that Ibrahim's attorney was zealous, competent, and well-prepared in his representation of his client. Solely as a result of those efforts, which spanned almost two years, Ibrahim recovered the full policy limits due under his UM contract, plus statutory penalties and attorney fees.
Having determined that when a partial payment has been made, "the amount found to be due" must be based on the amount that is ultimately found to be owed by the insurer to the insured, we further note that the insurer shall be subject to "all reasonable attorney fees for the prosecution and collection of such amount." (emphasis added). See LSA-R.S. 22:658(B)(1). In this case, such amount" is equal to the total recovery against Allstate, or $22,474.10, including the revised penalty. Therefore, the trial court's award of one-third of the net judgment, which resulted in an attorney fee of $26,527.07, exceeds the total recovery and is clearly excessive. Based on our recalculation of the total recovery and approximating the contingency fee reflected in Ibrahim's contract with his attorney, we believe an attorney fee award of $7,500 is appropriate. The judgment will be amended accordingly.

Legal Interest
The judgment ordered Allstate to pay the remaining balance under its policy *485 after deduction of the tenders it had already made, that being $20,431, and to pay legal interest on "said judgment" from the date of judicial demand, January 28, 2000, until paid.[8] Ibrahim contends that legal interest should be computed and paid on the total damages of $139,150 from the date of judicial demand until Allstate exhausts its policy limits of $50,000, citing Martin v. Champion Ins. Co., 95-0030 (La.6/30/95), 656 So.2d 991, in support of this argument. There the Louisiana Supreme Court held that the UM insurer's obligation to pay judicial interest on the amount of the judgment in excess of its policy limits was the same as its responsibility for such interest under its liability coverage, and awarded legal interest on the entire judgment, less the amount paid by the liability insurer, from the date of judicial demand. However, that decision was based on the supplementary payment provision in the liability portion of the insurance policy, which the court concluded must also be applicable to the UM portion of the policy under the statutory mandate of LSA-R.S. 22:1406. The record in this case does not contain a copy of the Allstate policy, so we are unable to ascertain whether the supplemental payment provision in the liability portion of the policy would mandate a similar result.
However, although the record contains insufficient information to justify an award of legal interest on the entire amount of the damages, we believe the trial court erred in awarding legal interest from the date of judicial demand on only the difference between the amount ultimately tendered by Allstate and its policy limits. Just as the insurer's liability for the principal amount of the judgment is restricted to its policy limits, its responsibility for judicial interest from the date of judicial demand should also be measured by its policy limits, which is the principal amount owed to its insured. Allstate was obligated to Ibrahim for its full UM limits of $50,000 plus its med-pay limits of $5,000. It made no payments until after suit was filed. Therefore, Allstate is liable for legal interest on $55,000 from the date of judicial demand until its first tender of $5,000 on April 24, 2000. Legal interest on $50,000 is due from April 25, 2000, until the next tender of $19,608 on September 26, 2000. Legal interest on $30,392 is due from September 27, 2000, until March 9, 2001, when Allstate made its final tender of $9,961. Legal interest is due on the balance of $20,431 from March 10, 2001, until paid in full.[9]
Because Allstate has obtained relief on the appeal, we do not award additional attorney fees to Ibrahim for the appeal. See Guidry v. Millers Cas. Ins. Co., 01-0001 (La.App. 1st Cir.6/21/02), 822 So.2d 675, 684.

CONCLUSION
We amend the judgment in favor of Ibrahim and against Allstate to award a penalty in the amount of $2,043.10 and attorney fees in the amount of $7,500. The judgment is further amended to bear legal interest on $55,000 from judicial demand *486 until April 24, 2000; on $50,000 from April 25, 2000, until September 26, 2000; on $30,392 from September 27, 2000, until March 9, 2001; and on the balance of $20,431 from March 10, 2001, until paid in full. In all other respects, the judgment is affirmed. Each party is to bear its own costs for this appeal.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Under LSA-R.S. 22:1406(D)(1)(a)(i), an insured can select UM coverage limited to actual economic losses, with no coverage for noneconomic damages like pain, suffering, inconvenience, and mental anguish. Ibrahim's policy was not limited to economic-only damages.
[3] Although the petition names only three children, Ibrahim and his wife had a fourth child while this matter was pending. The petition was not amended to include the fourth child, but the judgment does not enumerate the children among whom the loss of consortium award is to be divided. The appeal does not question this award.
[4] Although the letters in which the tenders were made were generally several days earlier, the judgment uses these stipulated dates as the dates for the Allstate UM tenders. We will adhere to the dates of the trial court judgment for these payments and the med-pay payment, which is shown as April 24, 2000.
[5] Although later correspondence in the claim file and Ms. Williams' trial testimony suggests the wage verification form was not received until some later date, our examination of the file reveals that she did have this information. Furthermore, without this wage verification from Ibrahim's employer, she could not have known how much to include for the 15 weeks of lost wages she conceded was established.
[6] Malbrough was the only case we could find from this circuit or the supreme court to specifically address the computation of the penalty under this portion of LSA-R.S. 22:658.
[7] Support for this conclusion concerning the Malbrough computation of damages is found in the comments of W. Shelby McKenzie and H. Alston Johnson, Insurance, Recent Developments in the Law 1991-1992, 53 La. L.Rev. 809, 815 (1993).
[8] This is the day suit was filed against Hawkins and State Farm. In Burton v. Foret, 498 So.2d 706, 712-13 (La.1986), the Louisiana Supreme Court noted that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single tortious act. Thus, the UM insurer was liable for legal interest from the date of judicial demand against the negligent motorist, even if the UM carrier was not joined as a defendant until a later date. See LSA-R.S. 13:4203.
[9] The trial court correctly awarded legal interest on the penalties and attorney fees from the date of the signed judgment. See Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. 1388-89.