934 So.2d 836 (2006)
Timothy COMBETTA
v.
Ron ORDOYNE, Jr., Encompass Insurance Company and State Farm Mutual Automobile Insurance Company.
No. 2004 CA 2347.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
*838 Peyton P. Murphy, Baton Rouge, Counsel for Plaintiff/Appellant, Timothy Combetta.
Edward F. Strauss, III, Baton Rouge, Counsel for Defendants/Appellants, Ron Ordoyne, Jr. and Continental Insurance Company.
John T. Roethele, Wes Hataway, Denham Springs, Counsel for Defendant/Appellee, State Farm Mutual Automobile Insurance Company.
Before: WHIPPLE, McDONALD, McCLENDON, HUGHES, and WELCH, JJ.
McCLENDON, J.
Plaintiff, Timothy Combetta, appeals from a judgment of the trial court denying his motion for summary judgment and granting summary judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On November 27, 2001, Combetta, a guest passenger in an automobile operated by Charles Wilson and owned by Sandra Taylor, was traveling northbound on La. Hwy. 1019 in Livingston Parish, Louisiana. Another vehicle owned and operated by defendant, Ron Ordoyne, Jr., was traveling southbound on the highway, crossed the center line into the northbound lane and struck the Wilson vehicle. Allegedly as a result of this accident, Combetta suffered several injuries, and ultimately underwent back surgery on June 25, 2002.
On February 26, 2002, Combetta filed a petition for damages naming as defendants Ordoyne and others, including State Farm, as Wilson's uninsured/underinsured (UM/UIM) insurer. The petition recites therein that Combetta sustained back injuries, loss of wages and other general and special damages. On April 1, 2002, in response to Combetta's petition, State *839 Farm filed an answer and cross-claim against Ordoyne and Ordoyne's liability insurer, Encompass Insurance Company.
The parties do not dispute that a policy of insurance, issued by State Farm to Wilson, was in full force and effect and afforded bodily injury liability coverage and UM/UIM motorist coverage, in the amount of $10,000.00 per person and $20,000.00 per accident. It is also undisputed that following the accident of November 27, 2001, and as shown by the affidavit of Chip Magee, a State Farm claims adjuster, State Farm issued payments under the UM policy as follows:
(1) On May 8, 2002, payment in the amount of $10,000.00 to Wilson, State Farm's named insured, for his UM/UIM motorist claim.
(2) On June 14, 2002, payment in the amount of $4,000.00 to Randy Foster, another guest passenger in the Wilson vehicle.
(3) On July 31, 2002, payment in the amount of $6,000.00 to Combetta representing the remaining limits of the UM/UIM motorist coverage afforded by the policy.[1]
State Farm also issued a check in the amount of $5,000.00 to Combetta representing the limits of medical payments coverage afforded by the policy.
On April 1, 2004, State Farm filed a motion for summary judgment seeking a judgment of dismissal of all claims against State Farm. Therein, State Farm contended that it had paid all available coverage amounts for which it could be held liable under its policy, and that it accordingly was entitled to dismissal from the suit.
In response to State Farm's motion for summary judgment, on April 22, 2004, Combetta filed a cross-motion for summary judgment seeking an award of $10,000.00, plus attorney's fees, penalties, and costs pursuant to LSA-R.S. 22:658 or, alternatively, LSA-R.S. 22:1220. Combetta contended in his motion and affidavit that his total medical bills exceeded $53,660.17; that he had not been able to work for over twenty-nine months, since November 27, 2001; and that because the extent and nature of his injuries were not known and could not be known until he underwent surgery on June 25, 2002, he was in fact the last person to make a claim against State Farm pursuant to the UM coverage. Combetta argued that State Farm's earlier payment of Wilson's and Foster's claims and tender to Combetta of only the remaining policy limits was improper and insufficient, considering the nature and extent of Combetta's injuries and medical bills.[2]
Combetta contended that rather than distribute on a "first-come-first-serve" basis, State Farm should have distributed the funds on a pro-rata basis, and that accordingly, since his injuries were the most severe, he should have received the largest amount ($10,000.00), of the three UM/UIM motorists, as opposed to the *840 $6,000.00 plus interest he received.[3] Combetta argued that State Farm's arbitrary and capricious bad faith adjustment and settlement of the claims of Wilson, Foster, and Combetta deprived him of his statutory UM/UIM rights provided by Louisiana law and that accordingly, he was entitled to judgment in his favor for the full limits and penalties and attorney's fees.
The cross motions for summary judgment were heard before the trial court on May 17, 2004, after which the trial court rendered judgment in favor of State Farm, dismissing it from the proceedings, and denying Combetta's motion for summary judgment. A written judgment was signed by the trial court on June 14, 2004.
Combetta appeals, contending that the trial court erred in granting State Farm's motion and in denying his motion.

SUMMARY JUDGMENT
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Racca v. St. Mary Sugar Cooperative, Inc., 02-1766, p. 4 (La.App. 1 Cir. 2/23/04), 872 So.2d 1117, 1120, writ denied, 04-0698 (La.5/7/04), 872 So.2d 1083. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538, p. 5 (La.App. 1 Cir. 11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. LSA-C.C.P. art. 966(C)(2). On issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. LSA-C.C.P. art. 966(C)(2). Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802, p. 10 (La.App. 1 Cir. 9/24/99), 745 So.2d 666, 673.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Davis v. Specialty Diving, Inc., 98-0458, 98-0459, p. 5 (La. App. 1 Cir. 4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/8/99), 750 So.2d 972.

DISCUSSION
On appeal, Combetta argues that the trial court erred in summarily dismissing his claim for the policy limits, plus attorney fees, penalties, and costs pursuant to LSA-R.S. 22:658 or, alternatively, LSA-R.S. 22:1220, given State Farm's "arbitrary, capricious, and bad faith settlement" *841 of the UM/UIM claims herein. Specifically, Combetta contends that by settling the claims on a "first-come-first-serve" basis, while having knowledge of his equally or more serious claim, State Farm breached its duty to act reasonably and in good faith. Instead, Combetta argues, State Farm should have evaluated all claims and processed each claim on a pro-rata basis. Thus, as he sustained the most serious injuries of the three claimants, he alleged he was entitled to receive a larger portion of the policy limits and State Farm acted improperly in failing to make the appropriate adjustment of all of the claims, given the three claims, the notice to State Farm of his pending serious claim, and the limited proceeds available.
In response, State Farm argues that it was relieved of any obligation to Combetta given its duty, pursuant to LSA-R.S. 22:658 A(1), to pay the claims submitted "in May/June of 2002" by Wilson and Foster within thirty days in order to avoid being subjected to civil penalties. State Farm claims that at the time it tendered payment to Wilson and Foster, although Combetta had filed suit, State Farm had not been provided with any proof of loss concerning the extent of Combetta's injuries or damages.
Louisiana Revised Statute 22:658 subjects an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount within thirty days of satisfactory proof of loss, to the mandatory imposition of penalties and attorney fees for the collection of such amount. Ibrahim v. Hawkins, 02-0350, p. 4 (La.App. 1 Cir. 2/14/03), 845 So.2d 471, 476. Louisiana Revised Statute 22:658 provides, in pertinent part as follows:
A. (1) All insurers issuing any type of contract, ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured,... or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due. (Emphasis added.)
Louisiana Revised Statute 22:1220(B) and (C) also provide in pertinent part as follows:
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * *
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the *842 claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. (Emphasis added.)
The conduct prohibited in LSA-R.S. 22:658(A)(1) is very similar to that prohibited in LSA-R.S. 22:1220(B)(5): the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. The primary difference is the time periods allowed for payment. Reed v. State Farm Mut. Auto. Ins. Co., 03-0107, p. 12 (La.10/21/03), 857 So.2d 1012, 1020. Whereas LSA-R.S. 22:658(A)(1) requires payment within thirty days of satisfactory proof of loss, LSA-R.S. 22:1220(B)(5) grants a longer period of sixty days for payment upon satisfactory proof of loss. We further note that LSA-R.S. art. 22:658 and LSA-R.S. 22:1220 are both penal in nature and must be strictly construed. Reed, 03-0107 at p. 13, 857 So.2d at 1020.
The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious." Both describe an insurer whose willful refusal of a claim is not based on a good faith defense. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La.1993). Bad faith has been described to mean more than mere bad judgment or negligence; it implies a dishonest purpose or evil intent. Vaughn v. Franklin, 00-0291, p. 8 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 86, writ denied, 01-1551 (La.10/5/01), 798 So.2d 969. Arbitrary action is a willful and unreasoning action, without consideration for the facts and circumstances presented, or acting with unfounded motivation. Vaughn, 00-0291 at p. 8, 785 So.2d at 86. An insurer's action in handling a claim is arbitrary and capricious when its willful refusal of a claim is not based on a good faith defense or is unreasonable or without probable cause. Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, p. 5 (La.1/19/00), 753 So.2d 170, 173.
Moreover, under LSA-22:1220(A), an insurer has a duty of good faith and fair dealing toward its insured, including the duty to adjust claims fairly and promptly. Willard v. R & B Falcon Drilling USA, Inc., 01-2334, p. 7 (La.App. 1 Cir. 12/20/02), 836 So.2d 424, 429. Louisiana Revised Statute 22:1220(A) provides, in pertinent part, as follows:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.[4]
This same duty to act reasonably and in good faith applies to settlement with claimants under UM coverage. See Palombo v. Broussard, 370 So.2d 216, 220 (La.App. 3 Cir.1979). In order to determine whether or not an insurer acted reasonably and in good faith in negotiating and settling a claim, one must look to the facts of the individual case. Palombo, 370 *843 So.2d at 220. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Reed, 03-0107 at p. 14, 857 So.2d at 1021.
Additionally, one who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. Reed, 03-0107 at p. 13, 857 So.2d at 1020. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. To establish a "satisfactory proof of loss," the insured must show that the insurer received sufficient facts to fully apprise the insurer (1) that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; and (3) that such fault gave rise to damages. The information must also indicate the extent of those damages. Reed, 03-0107 at p. 15, 857 So.2d at 1022; Ibrahim, 02-0350 at p. 4, 845 So.2d at 476-77. When satisfactory proof of loss has been made and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount that is due. This amount must be tendered unconditionally, not in settlement of the case, but to show good faith and the insurer's compliance with its contractual duties. The amount due is that amount over which reasonable minds could not differ. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1091-92 (La.1985); Ibrahim, 02-0350 at pp. 4-5, 845 So.2d at 477.
In the case sub judice, State Farm paid Wilson and Foster in May and June 2002, within thirty days of receipt of satisfactory proof of their loss, as required by LSA-R.S. 22:658 A(1). State Farm paid Combetta the remainder of the UM/UIM limits when it received proof of his loss. Combetta admits that his was the last claim submitted to State Farm as he did not know the nature or extent of his loss until his surgery on June 25, 2002. Thus, this is not the situation where State Farm was confronted with competing claims which clearly exceeded the policy limits. While State Farm was aware of the potential claim by virtue of the lawsuit, there is no evidence in the record that State Farm was apprised of the extent of any injury to Combetta when it made tenders to Wilson and Foster.[5] Consequently, the record fails to show that State Farm had knowledge that Combetta's claim exceeded the remaining policy amount when it made its first two tenders. Had State Farm waited until it was presented with a satisfactory proof of loss by Combetta to make any tenders of payment to the other claimants, State Farm would have violated its duty to Wilson and Foster under LSA-R.S. 22:658 and would have further violated its affirmative duty to adjust claims fairly and promptly under LSA-R.S. 22:1220(A). We cannot equate the filing of Combetta's suit, which was limited to general allegations of damage, to the satisfactory proof of loss required by law. To do so would allow an insurer to delay unconditional tenders and would undermine the legislative goal of timely good faith payments of amounts "due" to injured claimants.
*844 Nor is a concursus proceeding a viable solution, as it requires the insurer to deposit its entire policy limits into the registry of the court even though there may be insufficient information to confirm that all potential claims exceed policy limits.[6] Further, concursus proceedings would require that all claimants take legal action to receive that amount which is due to them. This would cause further litigation in our already over-crowded system of justice.
Therefore, based on our de novo review of the record, we cannot say that State Farm acted in bad faith at the time it made its tenders to Wilson and Foster, as Wilson and Foster had submitted satisfactory proofs of loss and State Farm did not know the extent of Combetta's injuries. While we recognize the possibility of some inequities, this cannot equate to bad faith on the part of State Farm in light of the present statutory scheme and the facts of this case. Accordingly, we conclude that State Farm's tender to Combetta of the remaining coverage amounts was not arbitrary, capricious, or without probable cause. Combetta did not supply State Farm with satisfactory proof of loss until after his June 25, 2002 surgery, which was subsequent to the previous unconditional tenders.

CONCLUSION
Based on the above and foregoing reasons, the June 14, 2004 judgment of the trial court granting summary judgment in favor of State Farm and dismissing plaintiff's claims with prejudice is affirmed. Costs of this appeal are assessed to Timothy Combetta.
AFFIRMED.
WHIPPLE, J., dissents for reasons assigned by J. HUGHES.
HUGHES, J., dissents for reasons assigned.
HUGHES, J., dissenting.
I respectfully dissent. The majority sanctions the non-judicial award of greater damages to the less injured, and seems to stand for the proposition that it is more important to pay minor claimants quickly even to the detriment of those more seriously injured. This irrational result cannot be justified.
Timothy Combetta was injured in an automobile accident on November 27, 2001. Less than three months later, on February 26, 2002, Combetta filed suit alleging severe injuries to his nose, head, left wrist, right leg, neck, back, and loss of wages. His claims were acknowledged by State Farm in its answer and cross-claim filed on April 1, 2002.
Yet on May 8, 2002 State Farm paid Charles Wilson $10,000 and on June 14, 2002 paid Randy Foster $4,000, thus depleting the bulk of its available 10/20 UM/UIM coverage.
While Combetta underwent surgery on June 25, 2002 and incurred medical bills exceeding $53,000, we do not know the basis for the payments to Wilson and Foster. The record before us is silent. Why 10 to Wilson and 4 to Foster? Did State Farm favor its insured over the other claimants? Perhaps there is a good faith, fair, reasonable, and rational basis for these awards. We cannot tell. The record is bare. It is respectfully submitted *845 that without this evidence summary judgment is inappropriate.
State Farm argues and the majority adopts the concern that State Farm would suffer penalties if it did not pay Wilson and Foster within 30 (or 60) days of receipt of satisfactory proof of loss. It is respectfully submitted that the point is missed that the law and jurisprudence in this regard are directed to refusals to pay, not multiple-claim situations. The issue here is not whether to pay or not pay a claim within the time limits, but a decision how to apportion known multiple claims. Another distinction is that while a liability insurer must base its settlement decisions on protecting its insured from an excess judgment, in a UM context the insurer owes equally to all claimants an obligation of good faith and fair dealing.
State Farm would only suffer penalties if a "failure" to pay is found to be arbitrary, capricious, or without probable cause. Surely the judicial claim of Combetta, acknowledged and adopted by State Farm, provides all the probable cause necessary to escape penalties. While the majority states it "cannot equate" the filing of Combetta's suit to satisfactory proof of loss, Combetta's suit should be seen as superior to the non-judicial offerings of the minor claimants. And because State Farm did not "fail" to pay, the focus is not on whether State Farm had some sort of excuse not to pay, but whether it fulfilled its obligation of good faith and fair dealing to all claimants in the amounts it actually did pay. In other words, this is not a failure to pay/penalty case, this is a payment made, but was it in good faith and fair to all claimants case.
The majority recognizes "the possibility of some inequities," stating this "cannot equate" to bad faith on the part of State Farm. The fact that there are inequities in this case makes it necessary for State Farm to carry its burden to show that the payments it made were in good faith and fair to all claimants.
State Farm could have easily protected itself by simply invoking a concursus. Concursus proceedings have traditionally been used in uninsured motorist coverage cases where there has been a question as to whom sums owed by an insurer should be paid. See e.g. Interstate Brands Corporation v. Gallow, XXXX-XXXX (La.App. 1 Cir. 11/4/05), 927 So.2d 395; Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214 (La.App. 1 Cir.1992); Townsend v. Ford Motor Company, 569 So.2d 238 (La. App. 1 Cir.1990), writ denied, 572 So.2d 72 (La.1991).
In Hartford Fire Ins. Co. v. Landreneau, 19 La.App. 280, 140 So. 52 (La.App. 1 Cir.1932) this court specifically found the use of concursus proceedings by the insurer to be reasonable and not warranting the imposition of statutory penalties. This reasoning should apply regardless of the statute under which penalties are sought against an insurer.
Concursus proceedings in insurance claims settings are commonplace, reasonable, and not arbitrary. In comparison, claims settled on a division by the number of claimants, or on a "first-come-first-served" basis, involve no reason and are arbitrary.
The majority demurs to a concursus because "this would cause further litigation in our already over-crowded system of justice."
Is litigation to be feared and justice deemed a finite resource? To the contrary, it is submitted litigation is one of the greatest inventions of civilization. People who have their day in court feel better, even if they lose. They are free to settle their claims as they will. It is when arbitrary authority speaks "you lose," without *846 explanation or chance for input, that people develop uncivilized feelings and lose respect for our system of justice.
In this multiple-claim situation, State Farm should be given the opportunity to show that its actions were in good faith and fair to all.
NOTES
[1] On December 18, 2002, however, the $6,000.00 check was returned to State Farm. On January 7, 2003, a replacement check in the amount of $6,291.12 and a supplemental check in the amount of $7.56, representing the remaining limits of the UM portion of the policy, plus legal interest from the date of judicial demand through January 8, 2003, were re-issued.
[2] Likewise, Combetta alleged in his third supplemental and amending petition that the extent and nature of his injuries were not known and could not be known until he underwent surgery on June 25, 2002, that the other claimants did not suffer injuries as severe as he did, that he was the last person to make a claim against State Farm, and that he should receive the largest amount of the coverage afforded under the UM policy.
[3] Combetta simply asserts that the other two claimants should have received less than the value of their claims to allow more money for the payment of his third and allegedly more serious UM/UIM claim.
[4] The legislature specifically used the terms "good faith" and "fair dealing" in LSA-R.S. 22:1220, but not in LSA-R.S. 22:658. In that respect, LSA-R.S. 22:1220 restates that which is already stated in the civil code: "Contracts must be performed in good faith." LSA-C.C. art.1983. The statutes, LSA-R.S. 22:658 and LSA-R.S. 22:1220, impose specific consequences if the insurer's actions do not conform to the obligations imposed therein. Reed, 03-0107 at p. 15, 857 So.2d at 1022.
[5] We note that the record reflects that, as early as February 6, 2002, Combetta discussed with his doctor treatment options including non-operative treatment and surgical intervention, and that Combetta did not wish to continue with conservative treatment opting instead for surgery. However, there is nothing in the record to indicate that State Farm ever received this medical report.
[6] It is not necessary to address whether a concursus proceeding would fulfill an insurer's duty to make a UM tender of any undisputed amount due because, in this case, at the time the first two tenders were made, it was still not known whether the combined amounts would exceed the full policy limits.