934 So.2d 134 (2006)
Ronald and Bethany DIXON
v.
FIRST PREMIUM INSURANCE GROUP, et al.
No. 2005 CA 0988.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
Writ Denied June 16, 2006.
*136 Bradley Berner, Thomas B. Waterman, Ponchatoula, for Plaintiffs-Appellees Ronald & Bethany Dixon.
James A. Rowell, Travis L. Bourgeois, New Orleans, for Defendant-Appellant Copenhagen Re (UK) Limited.
Before: GUIDRY, PETTIGREW, and GAIDRY, JJ.
PETTIGREW, J.
In this case, defendant challenges the trial court's judgment in favor of plaintiffs awarding $163,284.50 in damages. For the reasons that follow, we reverse in part and affirm in part.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Ronald and Bethany Dixon ("the Dixons"), filed suit against Copenhagen Re (UK) Ltd. ("Copenhagen") and Charter Insurance Agency, Inc. ("Charter") on September 15, 2000, alleging damages from a fire that destroyed their home located at 298 President Hoover Street in Ponchatoula, Louisiana.[1] According to the *137 record, the Dixons obtained a homeowners' policy with Copenhagen, through their insurance agent, Charter, in September 1998, insuring their home on President Hoover Street. The Dixons renewed the policy for another year in September 1999. Subsequently, on November 23, 1999, the Dixons purchased another home in Ponchatoula, on Southeast Railroad Avenue. The Dixons moved into the Southeast Railroad Avenue home in December 1999, and a tenant, Cabay Route, began renting the house on President Hoover Street the following month. Mr. Route was residing in the President Hoover Street house at the time of the fire on February 1, 2000. Copenhagen denied the Dixons' claims arising from the fire, on the grounds that the home was not their residence premises at the time of the loss.
Upon completion of discovery, the Dixons filed a motion for partial summary judgment against Charter on the issues of liability and damages. The Dixons also filed a motion for summary judgment against Copenhagen on the issue of coverage. In response to the Dixons' motion, Charter filed a cross-motion for summary judgment alleging that the Copenhagen policy provided coverage for the Dixons' loss, thus warranting summary judgment in favor of Charter dismissing the Dixons' suit with prejudice. Copenhagen also filed a cross-motion for summary judgment asserting there was no coverage under the policy for the Dixons' loss.
On August 26, 2002, the trial court heard arguments on the motions for partial summary judgment filed by the Dixons on the issues of liability, coverage, and damages. After considering the allegations contained in the motion and the evidence submitted in support thereof, the trial court granted the Dixons' motion for partial summary judgment, finding in favor of the Dixons and against Copenhagen and Charter in the amount of $56,000.00, reserving to the Dixons their claim for penalties and attorney fees, and reserving to Copenhagen and Charter their respective cross claims. The trial court signed a judgment to this effect on September 17, 2002, and later certified same as a final judgment.[2]
Under our docket number 2002 CA 2653, Copenhagen and Charter appealed the September 17, 2002 judgment. In an unpublished opinion ("Dixon 1") rendered on December 31, 2003, this court concluded there were material issues of fact remaining as to Charter's liability and whether the Copenhagen policy provided coverage. Accordingly, we reversed the summary judgment and remanded for further proceedings.
While the above appeals were pending in this court, the Dixons' claim that they were entitled to penalties and attorney fees pursuant to La. R.S. 22:658 and La. R.S. 22:1220 proceeded to a bench trial. Finding that Copenhagen breached its duties of good faith and fair dealing in failing to pay the Dixons' claim, the trial court signed a judgment on April 9, 2003, awarding $10,000.00 to each plaintiff for emotional distress, $40,000.00 in penalties, and $46,400.00 in attorney fees. Copenhagen appealed. In a May 14, 2004 unpublished opinion ("Dixon 2") under docket number 2003 CA 1506, this court concluded *138 that because the question of Copenhagen's liability remained unanswered, there could be no finding that Copenhagen breached its duties of good faith and fair dealing. Thus, we reversed the judgment and remanded for further proceedings.
The matter proceeded to a bench trial on August 17, 2004, at which time the trial court learned that Charter was no longer a party to the litigation and would be dismissed without prejudice. Thereafter, the remaining parties, the Dixons and Copenhagen, presented testimony and various joint exhibits for the court to consider regarding the issues of coverage and damages. At the close of the evidence, the court took the matter under advisement and asked for post-trial briefs from the parties.
Subsequently, on November 10, 2004, the court issued written reasons for judgment finding that the Copenhagen policy provided coverage for the Dixons' claim and that Copenhagen was arbitrary and capricious in its failure to timely pay the claim. With regard to damages, the court noted as follows:
The value of the loss of the dwelling was in the amount of $56,000.00. Plaintiffs are entitled to a loss of rentals in the amount of $350.00 per month beginning February 1, 2000 through the date of the trial and this amount [$18,900.00] is assessed as damages. Plaintiffs are entitled to 10% damages under [La.] R.S. 22:658 on the based sum of $56,000.00 or a sum of $5,600.00. Plaintiffs are entitled to double damages under R.S. 22:1220 on the amount of the foregone rent [$37,800.00].
Plaintiffs are entitled to general damages for mental anguish and emotional distress in the amount of $10,000.00 each.
Attorney's fees are awarded in the amount of $24,984.50.
The court signed a judgment to this effect on January 10, 2005, awarding $163,284.50 in damages to the Dixons. Copenhagen timely filed a motion for new trial, which was denied by the court on January 24, 2005. It is from these judgments that Copenhagen has appealed, assigning the following specifications of error:
1. The District Court erred in finding that [Copenhagen's] policy provides coverage.
2. The District Court erred in finding that [Copenhagen] breached its duties of good faith and fair dealing to the Dixons under La. R.S. 22:658 and La. R.S. 22:1220.
3. The District Court erred in denying [Copenhagen's] motion for involuntary dismissal and motion for new trial.[3]
4. The District Court erred in granting penalties under both statutes.
5. The District Court erred in awarding lost rental income; alternatively, the award is excessive.
6. The District Court erred in awarding damages for emotional distress under La. R.S. 22:1220; alternatively, the award is excessive.
7. The District Court erred in awarding penalties under La. R.S. 22:1220.
8. The District Court erred in awarding attorney fees under La. R.S. 22:658; alternatively, the award is excessive.

*139 COVERAGE UNDER COPENHAGEN'S POLICY
The issue of whether the Copenhagen policy provides coverage for the Dixons' loss presents a question of law. When a decision by a trial court involves a legal question, this court owes no deference to the legal conclusions of the trial court. Rather, appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Snyder v. Belmont Homes, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 2/16/05), 899 So.2d 57, 60, writ denied, XXXX-XXXX (La.6/17/05), 904 So.2d 699.
In Bennett v. Ragon, XXXX-XXXX, pp. 5-6 (La.App. 1 Cir. 3/24/05), 907 So.2d 116, 120, this court addressed the general principles of insurance policy interpretation as follows:
An insurance policy is an agreement between the parties and should be construed according to general rules of contract interpretation. The judiciary's role in interpreting insurance contracts is to determine the common intent of the parties to the contract. Unless the words of the policy have acquired a technical meaning, they are to be construed using their plain, ordinary, and generally prevailing meaning. The agreement must be enforced as written if the policy wording at issue is clear and expresses the intent of the parties. An insurance company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. The exclusionary provisions of an insurance contract are strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. (Citations omitted.)
Section I of the Copenhagen policy provides, in pertinent part, as follows with regard to property damage and what is covered by the policy:
COVERAGE ADwelling
We cover:
1. The dwelling on the "residence premises" shown in the Declaration, including structures attached to the dwelling; and
2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
The term "residence premises" is defined in the policy as follows:
"Residence premises" means:
a. The one family dwelling, other structures, and grounds; or
b. That part of any other building;
where you reside and which is shown as the "residence premises" in the Declarations.
"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.
As we did in Dixon 1, we acknowledge this language in the Copenhagen policy concerning "residence premises." However, we are mindful of the provisions of La. R.S. 22:691 that set forth the form for all standard fire insurance policies issued in the State of Louisiana. "No policy or contract of fire insurance shall be made, issued or delivered by any insurer, or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy." La. R.S. 22:691(B). Pursuant to La. R.S. 22:691(F), the pertinent provisions of the standard fire insurance policy form provide as follows:

*140 (2) SECOND PAGE OF STANDARD FIRE POLICY
. . . .
Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:
(a) While the hazard is increased by any means within the control or knowledge of the insured; or
(b) While a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied beyond a period of sixty consecutive days; or
(c) As a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.
Louisiana law statutorily incorporates these standard policy provisions in all fire insurance policies issued in the State of Louisiana. Thus, a sixty-day grace period is statutorily mandated wherein an insurance company is effectively prevented from terminating coverage unless the insured property remains vacant or unoccupied beyond a period of sixty consecutive days. Moreover, if the hazard is increased by any means within the control or knowledge of the insured, an insurance company can deny coverage for any loss occurring during such a period.
In the instant case, the Dixons moved out of their President Hoover Street home in December 1999. According to Mrs. Dixon, she notified Charter they intended to sell the President Hoover Street house but in the interim would rent the house and use the rental income to help pay for their new house on Southeast Railroad Avenue. As reflected in the record, Mrs. Dixon went to Charter on November 23, 1999, to discuss this matter, advising Charter that they only wanted insurance on the dwelling. The joint exhibit introduced into the record by the parties reads as follows: "Needs to just have dwelling insurance. Please drop contents, adj. structures, liability, loss use. Just $56,000 on dwelling."
Mr. Route began renting the President Hoover Street house in January 2000. He was living there when the fire occurred approximately one month later. Thus, the President Hoover Street house was not vacant or unoccupied beyond the aforementioned sixty-day grace period. Accordingly, Copenhagen could not deny coverage unless, as it argues, the Dixons increased the hazard by renting the property to Mr. Route.
In Dixon 1, we noted the absence of any specific evidence that the Dixons increased the risk to Copenhagen by renting the property to Mr. Route. Moreover, we found various provisions in the Copenhagen policy that seemed to imply knowledge on the part of Copenhagen that the insureds may, at times, temporarily rent or lease the insured premises. Accordingly, we reversed the summary judgment on the issue of coverage and remanded for further proceedings.
The issue of coverage was again submitted to the trial court for consideration on August 17, 2004. At that time, Copenhagen failed to call any witnesses, instead relying on various joint exhibits that were introduced by the parties. Included in the exhibits was the transcript of the October 24, 2002 bench trial on the issue of penalties and attorney fees. On appeal, Copenhagen points to the October 24, 2002 testimony of Kevin Carter, Charter's owner and manager, as support for its position that its risk was increased when the Dixons rented the President Hoover Street house to Mr. Route. However, we have reviewed the October 24, 2002 trial transcript and find very little difference between Mr. Carter's testimony at that time and Mr. Carter's deposition testimony that we previously considered and found to be *141 insufficient to support Copenhagen's position.
As further support for its position, Copenhagen contends this court should consider the affidavit of Ken Matlin, Copenhagen's Claims Manager. However, according to the record, Copenhagen submitted this affidavit with its motion for new trial. The motion for new trial was denied by the trial court, and we have declined to disturb the court's judgment in that regard. Thus, Mr. Matlin's affidavit is not properly before us; we cannot consider the allegations contained therein in our review of this case.
This case seems to have come full circle. We are back where we started when we first considered the coverage issue in Dixon 1. Again, Copenhagen has failed to produce evidence sufficient to support its allegation that the Dixons increased the hazard by renting the house to Mr. Route. Reviewing the Copenhagen policy and considering the pertinent provisions of the standard fire insurance policy form that must be incorporated therein, we see no valid basis for Copenhagen to deny coverage. Based on the unique facts and circumstances of this case, we conclude that the Dixons' actions in renting the property to Mr. Route was not a "violation of the residency requirement" of the policy as is argued by Copenhagen on appeal. Accordingly, we find no legal error in the trial court's decision that the Copenhagen policy provided coverage to the Dixons for their loss.

PENALTIES AND ATTORNEY FEES
Several of Copenhagen's assignments of error on appeal relate to the trial court's award of penalties and attorney fees. Copenhagen contends the evidence does not support a finding that it breached its duties of good faith and fair dealing to the Dixons pursuant to La. R.S. 22:658 and La. R.S. 22:1220. Copenhagen maintains "[t]here is simply no evidence in this record, nor any opinion from any persons, expert or lay, that [it] acted with a dishonest purpose or evil intent sufficient to constitute `bad faith,' or that it acted `vexatiously,' with willful and unreasoning abandon in denying coverage over the structure at issue." Copenhagen argues further that even if the Dixons are entitled to penalties, the trial court erred in awarding penalties under both La. R.S. 22:658 and La. R.S. 22:1220. Moreover, with regard to the court's award of attorney fees, Copenhagen alleges the award is grossly excessive and not supported by the record. Thus, Copenhagen asserts, the award of attorney fees must be reduced.
At the outset, we note that the trial court's conclusion with respect to the assessment of penalties and attorney fees is, in part, a factual determination. Thus, great deference must be accorded to the trial court. Its decision should not be disturbed on appeal in the absence of a finding that it was manifestly erroneous or clearly wrong. Ibrahim v. Hawkins, XXXX-XXXX, p. 5 (La.App. 1 Cir. 2/14/03), 845 So.2d 471, 477. The issue to be resolved by the reviewing court is not whether the trial court was right or wrong, but whether the court's conclusion was a reasonable one in light of the record evidence. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993).
At all times pertinent hereto, La. R.S. 22:658 mandated the imposition of penalties and attorney fees when an insurer fails to pay its insured in accord with the statutory provisions. It provided, in pertinent part, as follows:
A. (1) All insurers issuing any type of contract . . . shall pay the amount of any *142 claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
. . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured,. . . together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.[4]
Louisiana Revised Statutes 22:658 is penal in nature; as such, it must be strictly construed. Vaughn v. Franklin, XXXX-XXXX, p. 15 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 91, writ denied, XXXX-XXXX (La.10/5/01), 798 So.2d 969. When an insurer is arbitrary or capricious in failing to unconditionally tender the undisputed amount due within thirty days of satisfactory proof of loss, La. R.S. 22:658 subjects the insurer to the mandatory imposition of penalties and attorney fees for the collection of such amount. Ibrahim, XXXX-XXXX at 4, 845 So.2d at 476.
Another statute allowing a court to impose penalties for an insurer's failure to deal with its insured in good faith is La. R.S. 22:1220, which states, in pertinent part:
A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
. . . .
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.
Under this statute, when an insurer is found to have acted arbitrarily, capriciously, or without probable cause, the insurer shall be liable for damages sustained as a result of the breach, and may be assessed penalties not to exceed two times the damages sustained or five thousand dollars, whichever is greater. La. R.S. 22:1220(A) and (C); Calogero v. Safeway Ins. Co. of *143 Louisiana, 99-1625, p. 5 (La.1/19/00), 753 So.2d 170, 173.
There is a close relationship between the conduct described in La. R.S. 22:658(B)(1) and the conduct described in La. R.S. 22:1220(B)(5). See Theriot v. Midland Risk Ins. Co., 95-2895, p. 14 n.14 (La.5/20/97), 694 So.2d 184, 192 n. 14. In fact, the conduct is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. The primary difference is that under La. R.S. 22:658(A)(1) and (B)(1), the insurer must pay the claim within 30 days of receiving satisfactory proof of loss, rather than the longer 60-day period allowed under La. R.S. 22:1220(B)(5). Calogero, 99-1625 at 6-7, 753 So.2d at 174. Where La. R.S. 22:1220 provides the greater penalty, it supersedes La. R.S. 22:658, such that the insured cannot recover penalties under both statutes. However, because La. R.S. 22:1220 does not provide for attorney fees, the insured is entitled to recover the greater penalties under its provisions and attorney fees under La. R.S. 22:658 for its insurer's arbitrary or capricious failure to timely pay his claim after receiving satisfactory proof of loss. Calogero, 99-1625 at 7, 753 So.2d at 174.

Arbitrary and Capricious
According to the record, the fire occurred on February 1, 2000. The Dixons reported the loss on the following day. Charter sent a Notice of Cancellation to the Dixons on March 8, 2000, advising them that their policy was cancelled effective February 2, 2000, because of the "TOTAL FIRE LOSS," and returning $257.00 of the original policy premium to the Dixons. Subsequently, on May 3, 2000, an attorney representing Copenhagen sent a certified letter to the Dixons indicating that because they no longer resided at the President Hoover address, they were no longer afforded coverage under the Copenhagen policy. Thus, clearly relying on the wording of its policy, Copenhagen, through its attorney, advised the Dixons as follows: "Because you no longer resided at 298 President Hoover Street at the time of the fire loss, no coverage is available under the policy for destruction of the premises."
In Dixon 1, this court considered the issue of coverage on review of a summary judgment granted in favor of the Dixons. While we acknowledged the language in the Copenhagen policy concerning the "residence premises," we also noted the pertinent provisions of the standard fire insurance policy form that must be incorporated into the Copenhagen policy; i.e., that Copenhagen could not deny coverage unless the insured property remained vacant or unoccupied beyond a period of sixty consecutive days or if the hazard was increased by any means within the control or knowledge of the insured. See La. R.S. 22:691(F)(2). Noting that the premises were not vacant or unoccupied beyond the sixty-day grace period, this court concluded that Copenhagen could not deny coverage unless, as they argued, the Dixons increased the hazard by renting the property.
We concluded there were material issues of fact remaining as to Charter's liability and whether the Copenhagen policy provided coverage. We noted that Charter's owner and manager, Kevin Carter, had testified, by deposition, that in general insurance terms, when a homeowner moves out of a house and rents it to a tenant, it creates a greater risk for the insurer. Nonetheless, we found an absence of any specific testimony about the facts and circumstances of the instant case and whether there was an increase in risk for Copenhagen when the Dixons moved out of their President Hoover Street home and rented *144 the house to Mr. Route. Accordingly, we reversed the summary judgment and remanded for further proceedings.
The matter proceeded to a bench trial on August 17, 2004, at which time Copenhagen failed to call any witnesses to testify. Rather, Copenhagen simply relied on various joint exhibits that were introduced, including the transcript of the October 24, 2002 bench trial. In the instant appeal, Copenhagen relies on Mr. Carter's testimony from the October 24, 2002 trial as support for its position that its risk was increased when the Dixons rented the house to Mr. Route. As previously indicated, we have reviewed the October 24, 2002 trial transcript and still find Mr. Carter's testimony unpersuasive on this issue.
With regard to Copenhagen's handling of the Dixons' claim, the trial court made the following findings:
At the trial on the merits herein held on August 11, 2004, the defendant produced no evidence whatsoever in their case in chief and, in particular, no evidence that the rental of the dwelling in any fashion increased the moral hazard, thereby defeating coverage.
For these reasons, and for reasons previously assigned in awarding damages, the following supplemental facts are found to be true. The property was insured by Copenhagen. The property was totally destroyed in January, 2000. The insureds promptly filed a satisfactory proof of loss in writing on February 2, 2000, immediately after the loss. Copenhagen refused to pay under the terms of the policy and indicated their position by certified mail on May 3, 2000. Copenhagen has consistently refused to pay since that time. Copenhagen has consistently refused to pay since the Court of Appeal decision in this matter on December 31, 2003 which specifically pointed out that Copenhagen was required to rely more upon merely the fact that the insureds had rented the premises within the 60 day grace period. Copenhagen has produced no facts of record, and has uncovered no facts since the Court of Appeal decision and has not paid since the date of the trial, August 11, 2004, nor as of the date of this decision. I cannot envision a more arbitrary and capricious position for an insurance company to take.
Having thoroughly reviewed the record, we agree. We conclude there is sufficient evidentiary support for the trial court's findings in this regard. Accordingly, we find no manifest error in the trial court's conclusion that Copenhagen was arbitrary and capricious in its handling of Dixons' claim.

La. R.S. 22:1220 Damages and Penalties
In awarding damages and penalties to the Dixons pursuant to La. R.S. 22:1220, the trial court concluded the Dixons were "entitled to a loss of rentals in the amount of $350.00 per month beginning February 1, 2000 through the date of the trial" ($18,900.00) as damages and double that amount ($37,800.00) as penalties.
On appeal, Copenhagen argues the trial court erred in awarding damages and penalties under La. R.S. 22:1220 based on the loss of rental income because there is no record evidence to support same. We find no merit to this argument. Whether a party has proven that he or she actually suffered damages as a result of an insurer's breach is a factual determination to be made by the trial court. Graves v. Businelle Towing Corp., 95-1999, p. 6 (La.App. 1 Cir. 4/30/96), 673 So.2d 311, 315. As such, the court's finding in this regard cannot be disturbed on appeal in the absence of manifest error. Stobart, 617 So.2d at 882.
*145 Mrs. Dixon testified that it was their intent to rent the President Hoover Street house until such time that they could sell the house. The Dixons planned to use the rent money to help pay the mortgage note on their new house. Mr. Route began renting the house in January 2000 for $350.00 monthly rent, which is evidenced not only by Mrs. Dixon's testimony, but also by the rent receipt that appears in the record. We have thoroughly reviewed the evidence in this case and are convinced that the trial court's findings with regard to loss of rental income are reasonable in light of the record in its entirety. We see no manifest or reversible error in the court's award of $18,900.00 in damages and $37,800.00 in penalties pursuant to La. R.S. 22:1220.

La. R.S. 22:658 Penalties
In addition to the damages and penalties awarded under La. R.S. 22:1220, the trial court imposed a penalty pursuant to La. R.S. 22:658 in the amount of $5,600.00, or "ten percent damages on the amount found to be due from the insurer to the insured." Copenhagen contends on appeal that the court erred in awarding penalties under both statutes. We agree. Under the jurisprudence, where the provisions of La. R.S. 22:1220 provide the greater penalty, it supersedes La. R.S. 22:658, such that the insured cannot recover penalties under both statutes. Calogero, 99-1625 at 7, 753 So.2d at 174. Thus, the court's award of La. R.S. 22:658 penalties in the amount of $5,600.00 must be reversed.

La. R.S. 22:658 Attorney Fees
In determining an award of attorney fees to be assessed under La. R.S. 22:658, the trial court should consider the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and difficulty of the questions involved, and the percentage fixed for attorney fees in the plaintiff's contract. Khaled v. Windham, 94-2171, p. 11 (La.App. 1 Cir. 6/23/95), 657 So.2d 672, 680, writ dismissed, 95-1914 (La.11/1/95), 661 So.2d 1369. The trial court must base its award of attorney fees on the attorney's efforts expended for "the prosecution and collection of" the loss, that being the amount of any claim due the insured, rather than on the total recovery awarded. See Desoto v. Balbeisi, XXXX-XXXX, p. 6 (La.App. 1 Cir. 12/20/02), 837 So.2d 48, 52, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 399.
We have reviewed the evidence in this case and find that the record provides ample support for the trial court's award of $24,984.50 in attorney fees. This matter was before the trial court numerous times over the past three years and is now before this court for the third time on appeal. The trial court was very familiar with the case and the work of the Dixons' attorney. Moreover, the parties introduced a joint exhibit at the trial of this matter setting forth the pertinent contingency fee agreement and a statement of account itemizing the time spent by the Dixons' attorney on the case. Counsel for both sides stipulated that if the Dixons' attorney was called to testify, he would testify in accordance with same. Thus, the court's award of $24,984.50 in attorney fees was appropriate and we decline to disturb the award on appeal.

MENTAL ANGUISH AND EMOTIONAL DISTRESS
Copenhagen argues on appeal that this court should reverse the trial court's award of $20,000.00 to the Dixons in general damages for mental anguish and emotional *146 distress. Citing La. Civ.Code art. 1998 and various cases concerning this issue, Copenhagen maintains that because the Dixons' claims were based on an alleged breach of an insurance contract, their damages were limited to pecuniary losses flowing from the breach. We agree.
Article 1998 provides as follows with regard to damages for nonpecuniary loss:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
It is well settled in Louisiana law that the object of a contract of insurance is the payment of money. Nickels v. Guarantee Trust Life Insurance Company, 563 So.2d 924, 927 (La.App. 1 Cir.1990). Thus, absent any evidence that Copenhagen intended to aggrieve the feelings of the Dixons, damages for nonpecuniary loss are not recoverable. There is no such evidence before us. Accordingly, we reverse that portion of the trial court's judgment that awarded $20,000.00 to the Dixons in general damages for mental anguish and emotional distress.

CONCLUSION
For the above and foregoing reasons, we reverse the trial court's judgment insofar as it awarded $5,600.00 in La. R.S. 22:658 penalties and $20,000.00 in general damages for mental anguish and emotional distress. In all other respects, the judgment is affirmed. All costs associated with the appeal of this matter are assessed against Copenhagen.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] The Dixons originally named First Premium Insurance Group, Inc. as a defendant, but later filed an amending petition correctly naming Copenhagen as their insurer.
[2] According to the August 26, 2002 minute entry, the trial court also considered the motions for summary judgment filed by Copenhagen and Charter. The court took these matters under advisement and, later that same day, denied both motions. Copenhagen moved for a new trial on its motion for summary judgment, which was summarily denied by the trial court.
[3] We note that Copenhagen has abandoned this argument by not briefing the issue. See Uniform RulesCourts of Appeal, Rule 2-12.4. Nonetheless, even if Copenhagen had briefed the issue, the established rule in this circuit is that the denial of a motion for new trial is not an appealable judgment absent a showing of irreparable harm. LeBlanc v. City of Donaldsonville, 2003-2533, p. 5 (La.App. 1 Cir. 10/29/04), 897 So.2d 104, 107. There has been no showing of irreparable harm in this case.
[4] Louisiana Revised Statutes 22:658(B)(1) was amended by 2003 La. Acts 790, § 1 to increase the "ten percent damages on the amount found to be due from the insurer to the insured" to twenty-five percent. The amendment also removed the award of attorney fees from this section of the statute.