AMANDA RELLE
v.
CHARLES J. MAYFIELD, U.S. AGENCIES CASUALTY INSURANCE COMPANY AND UNITED SERVICES AUTOMOBILE ASSOCIATION.
No. 2007 CA 1167.
Court of Appeals of Louisiana, First Circuit.
March 26, 2008.
MARK D. PLAISANCE, Counsel for Plaintiff/Appellant Amanda Relle.
DANIEL A. REED, Counsel for Defendant/Appellee United Services Automobile Association.
Before: GAIDRY, McDONALD and McCLENDON, JJ.
McCLENDON, J.
The plaintiff, Amanda Relle, appeals the trial court judgment awarding her damages for injuries she suffered in a rear-end automobile accident, but denying her damages for loss of earning capacity. The defendant uninsured/underinsured (UM) carrier, United Services Automobile Association (USAA), answered the appeal contending that the trial court was clearly wrong in the amount of damages awarded for medical expenses and in determining that USAA was arbitrary and capricious in its handling of the UM claim. For the reasons that follow, we reverse in part and affirm in part.

FACTS AND PROCEDURAL HISTORY
On September 8, 1999, Ms. Relle was rear-ended by a truck driven by the defendant, Charles Mayfield, while she was driving her employer's automobile on a work-related errand. Her employer's vehicle was insured by USAA.[1] Ms. Relle filed a lawsuit for her damages and a two-day bench trial was held on March 21 and 22, 2005. At trial, the parties stipulated 1) that the accident was caused solely by the fault of Mr. Mayfield, 2) that Mr. Mayfield had insurance with U.S. Agencies in the amount of $10,000.00, 3) that the $10,000.00 amount from U.S. Agencies had been exhausted, 4) that there was no other available underlying insurance, 5) that Ms. Relic was operating the vehicle with her employer's permission, 6) that the medical records and invoices were authentic, 7) that USAA paid its medical payments coverage limit of $10,000.00 and tendered $50,000.00 under its UM coverage, and 8) that the trial would be limited to the issue of compensatory damages, with the issue of whether USAA timely tendered a proper amount to Ms. Relle to be determined in a subsequently scheduled tria1.[2]
On March 23, 2005, the trial court issued its oral reasons for judgment. The trial court determined that as a result of the accident herein, Ms. Relle suffered injuries to her back, neck, and right knee. The court concluded that while the neck and back injuries resolved fairly quickly, Ms. Relle had continuing complaints of pain in her knee.[3] The trial court awarded to Ms. Relle $58,528.00 for her medical expenses, $576.00 for additional medical expenses (for Advil), $1,378.80 for past lost wages, and $75,000.00 for general damages. No award was made for loss of future wages, as the trial court determined that Ms. Relle was not disabled and that she was capable of full-time employment. Regarding Ms. Relle's claim that USAA failed to make a timely and adequate UM tender, the trial court issued oral reasons on May 30, 2006. As to this portion of the bifurcated trial, the trial court concluded that USAA acted in an arbitrary and capricious manner in failing to pay more than its total tender of $60,000.00 (the $10,000.00 medical payments limit and the $50,0000.00 UM tender), over and above the $10,000.00 underlying insurance, and awarded Ms. Relle $6,548.37 in penalties and $36,000.00 in attorney fees.[4] A judgment reflecting both rulings was signed on February 9, 2007.

DISCUSSION
On appeal, Ms. Relle contends that she is entitled to a damage award for loss of future earnings because as a result of the accident she is unable to work a full-time job. In its answer to the appeal, USAA asserts that because Ms. Relic's medical expenses and much of her lost income would have been "payable" by workers' compensation, those amounts should have been excluded under its policy. USAA further contends that because Ms. Relle did not try to negotiate lower medical expenses, the trial court erred in failing to find that she failed to reasonably mitigate her damages. Lastly, USAA argues that it was not arbitrary and capricious in evaluating Ms. Relle's claim, as there were legitimate issues concerning her credibility and the extent of her injuries.[5]
In its oral reasons regarding damages, the trial court initially determined that USAA was not entitled to an offset under its policy for amounts that might have been payable to Ms. Relle through workers' compensation. We agree. Ms. Relle had no obligation to seek workers' compensation benefits. Her claim against USAA was for damages caused by an underinsured tortfeasor. Ms. Relle never sought workers' compensation benefits, nor were such benefits ever paid. Thus, there was no possibility of double recovery.
The trial court then reviewed the medical evidence, recognizing that there were minimal objective findings regarding Ms. Relle's complaints of pain in her knee. The court concluded that there was no pathology to cause her any disability, although it did believe that she was having pain and that her pain complaints were legitimate and ongoing. The trial court found that USAA 's argument that Ms. Relle's medical treatment was unnecessary and should not have been incurred was without merit, stating that there was no evidence that the treatment was not reasonable or that Ms. Retie was in bad faith. We agree that USAA failed to establish bad faith on the part of Ms. Relle. See Spangler v. Wal-Mart Stores, Inc., 95-2044 (La.App. 1 Cir. 5/10/96), 673 So.2d 676, 679 (It is well established that a tortfeasor is liable for unnecessary treatment or over treatment unless the tortfeasor can show that the plaintiff underwent the treatment in bad faith.). The court also correctly found that there was no obligation on the part of Ms. Relle to attempt to negotiate lower medical expenses. Accordingly, the trial court awarded medical expenses in the amount of $58,528.00, finding that Ms. Relle was entitled to the full amount.
As to Ms. ReIle's claim for loss of future earnings, the trial court concluded that the evidence did not show that Ms. Retie' s pain was debilitating or that it caused her to be unable to work. The court found no pathology that would cause Ms. Relle any disability preventing her from working an eight to nine hour day and that no doctor testified that she was disabled from working. Further, the court interpreted the work capacity form completed by Dr. John J. Watermeier, one of Ms. Relle's orthopedic surgeons, to mean that Ms. Relic could work a full eight or nine hour day. The trial court concluded that Ms. Relle could sit for three hours, stand for three hours, and walk for three hours during a work day, but that she was able to do any one for only one hour at a time according to Dr. Watermeier's assessment.[6] Therefore, finding no evidence to prevent Ms. Relle from working full time, the trial court made no award for loss of future earnings.
After a thorough review of the record and evidence in this matter, we find no manifest error in the trial court's award of $58,528.00 in medical expenses. Nor do we find that the trial court was clearly wrong in failing to make an award for loss of future wages. The record reasonably supports the trial court's factual findings, and we cannot say that the trial court's judgment regarding these awards was manifestly erroneous or clearly wrong. See Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La. 1993).
Our next inquiry is whether USAA acted in an arbitrary and capricious manner such that Ms. Relle is entitled to penalties and attorney fees in this matter pursuant to LSA-R.S. 22:658.[7]
At all pertinent times hereto, LSA-R.S. 22:658 provided, in part:
A. (1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, . . . together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
Initially, we note that LSA-R.S. 22:658 is penal in nature, and as such, it must be strictly construed. Dixon v. First Premium Ins. Group, 05-0988, p. 10 (La.App. 1 Cir. 3/29/06), 934 So.2d 134, 142, writ denied, 06-0978 (La. 6/16/06), 929 So.2d 1291.
One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. Reed v. State Farm Mutual Automobile Ins. Co., 03-0107, p. 13 (La. 10/21/03), 857 So.2d 1012, 1020. The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay. The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. Reed, 03-0107 at p. 13, 857 So.2d at 1021.
The phrase "arbitrary, capricious, or without probable cause," has been described as being synonymous with "vexatious." "Vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. Reed, 03-0107 at pp. 13-14, 857 So.2d at 1021.
Further, whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error. However, when the record does not support the trial court's determination on this issue, the trial court's decision will be reversed. Reed, 03-0107 at p. 14, 857 So.2d at 1021.
In this matter, the trial court determined that Ms. Relle was credible and not in bad faith, that her neck, back and knee injuries were caused by the 1999 accident, and that Ms. Relle's medical expenses were clearly recoverable. Therefore, because Ms. Relle's medical expenses were close to $60,000.00 and Ms. Relle's other claims remained, the trial court concluded that USAA acted in an arbitrary and capricious manner in refusing to make an adequate UM tender.[8] USAA asserts, however, that the trial court erred in finding that its failure to tender more than $60,000.00, over and above the $10,000.00 underlying insurance, was unreasonable, that is, not in good faith, in light of the fact that USAA never received satisfactory proof of loss from Ms. Relle.
Louisiana Revised Statutes 22:658 imposes upon the claimant an obligation to produce a satisfactory proof of loss. "Satisfactory proof of loss" in a claim pursuant to UM coverage is receipt by the insurer of "sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he [or she] was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." Reed, 03-0107 at p. 15, 857 So.2d at 1022, citing McDill v. Utica Mutual Ins. Co., 475 So.2d 1085, 1089 (La. 1985).
Thus, the issue presented herein is whether the insurer received satisfactory proof of loss regarding Ms. Relle's injuries. In other words, did USAA have a legitimate basis to contest the extent of Ms. Relle's injuries? While we agree with the trial court that the record supports the finding that Ms. Relle suffered a neck, back, and knee injury in the 1999 accident, we conclude that the record does not support a finding that USAA was arbitrary and capricious in failing to tender more than the $60,000.00 amount over the $10,000.00 underlying insurance. We recognize that if the workers' compensation policy defense and the defense regarding write-offs were the only defenses raised by USAA, the trial court may have been correct in finding that USAA acted unreasonably and without probable cause in failing to make an additional tender, since these defenses were not viable ones. However, these initial defenses were not the only questions with which USAA was confronted, and in fact USAA's principal question concerned causation and the extent of Ms. Relle's injuries.[9]
The record shows the following. The day after the September 8, 1999 accident, Ms. Relle went to the emergency room with complaints of headaches and low back pain. No complaint was made regarding her knee at that time. Subsequently, Ms. Relle was referred to Dr. William Cherry, who saw Ms. Relle on September 20, 1999. Ms. Relle complained of headaches and dizziness, neck pain, back pain, right shoulder pain and right knee pain. She also had numbness and tingling feeling in the right arm and forearm. Dr. Cherry diagnosed cervical, thoracic, and lumbar strains, impact injuries to the right shoulder and right knee, and traumatic headaches. Ms. Relle returned for an office visit on October 8, 1999, at which time she stated that her neck and back still hurt and were stiff. She stated that she continued to have numbness in the right shoulder region and that her right knee was giving out. Ms. Relle still complained of bad headaches. Dr. Cherry recommended an orthopedic consultation.
Ms. Relle next consulted with Dr. Stephen J. Flood, an orthopedist, on November 29, 1999. Dr. Flood diagnosed Ms. Relle with a cervical and lumbar syndrome, a right shoulder sprain, and right knee internal derangement. He ordered an MM of the cervical spine and right knee. Ms. Relle returned to Dr. Flood on January 10, 2000, after having a cervical MRI. His diagnosis again was cervical and lumbar syndrome and right shoulder sprain. On July 5, 2000, Ms. Relle had an MRI taken of her right knee, which showed cystic degeneration or a small focal tear in the medial meniscus. Ms. Relle followed up with Dr. Stuart Phillips, an orthopedic surgeon and Dr. Flood's partner, on July 20, 2000, approximately ten months post-accident. Dr. Phillips determined that while Ms. Relle's neck and back injuries had apparently resolved, she still complained of tenderness, pain, and fluid in her right knee. Because conservative treatment did not seem to be working, Dr. Phillips recommended arthroscopic surgery, which was performed on September 13, 2000. Dr. Phillips did not find the tear he thought he saw on the MRI and did some minimal shaving of the cartilage in the knee.
Ms. Relle continued to complain of knee pain and swelling, and a second MRI was done in March of 2001. Upon review of this MRI, Dr. Phillips' diagnosis was chondromalacia of the patella. Open surgery was discussed with Ms. Relle as a possibility to realign the patella. Rather than have another surgery, Ms. Relle sought a second opinion. She consulted Dr. Watermeier, who eventually performed a second arthroscopic procedure on April 9, 2002. Dr. Watermeier discovered that patella realignment was not necessary, and he performed limited shaving of the cartilage.
An independent medical examiner, Dr. Bryan Griffith, examined Ms. Relle on November 6, 2002, and concluded that she suffered from anterior knee pain syndrome. From his review of the medical records, Dr. Griffith could not determine whether the 2000 arthroscopy was necessary. With regard to the second surgery in 2002, Dr. Griffith was of the opinion that he would not have performed the surgery in light of what he considered to be a normal MRI with her anterior knee pain syndrome. However, although he would not have personally performed the procedure, Dr. Griffith could not rule out that the surgery was not indicated in the right clinical situation.
The record further shows that at the time USAA received Ms. Relle's demand for its policy limits in December of 2000, some medical records were supplied, but they were incomplete. Thereafter, in November of 2001, USAA received a detailed demand from Ms. Relle with additional medical records. On November 30, 2001, USAA paid its medical payments limits of $10,000.00. It also made a UM tender of $10,000.00. On August 5, 2002, USAA received a new comprehensive demand from Ms. Relle, informing it of Ms. Relle's second surgery in April of 2002. On August 30, 2002, USAA made another UM tender, this time in the amount of $40,000.00. USAA stated that it was aware that Ms. Relle had an earlier automobile accident in 1997.[10] Although it had not yet received documentation regarding the first accident, and although her employment records were incomplete, the $40,000.00 tender was made.
While Ms. Relle had extensive medical expenses, USAA had genuine and reasonable questions as to whether all of the medical treatment, including the arthroscopic surgeries, was related to the 1999 automobile accident and was necessary for the injuries that Ms. Relic sustained. The amount tendered by USAA in August of 2002 was, according to USAA, a good faith attempt to try to balance the extensive medicals against significant causation issues.[11]
Even though Ms. ReIle had two surgeries on her knee, neither surgeon found objective evidence to explain her knee pain. Without this evidence, USAA certainly could legitimately and reasonably question the cause of her pain complaints and the extent of her knee injury. Dr. Griffith's report gave some indication that the surgeries might not have been necessary. Further, Ms. Relle had been involved in a prior automobile accident in 1997, which at the time of the 1999 accident was still being resolved. Surveillance suggested that Ms. Relic had no real restrictions in her activities, and her credibility was at issue as to the extent of her injuries. Although the trial court ultimately did find Ms. Relle credible, USAA' s handling of the file cannot be considered in hindsight. USAA made tenders over and above the underlying policy of $10,000.00 totaling $60,000.00, which was a substantial amount considering the minimal objective findings of any knee injury.
As previously stated, LSA-R.S. 22:658 is a penal statute and must be strictly construed. USAA should not be forced to litigate legitimate factual disputes at its peril. This is a result not intended by the statute and would create a chilling effect on an insurer's constitutional right of access to the courts when it acts in good faith upon reasonable grounds. See LSA-Const. art. I, § 22. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred. Reed, 03-0107 at p. 13, 857 So.2d at 1021.
Considering all of the information available to it, USAA's decision not to make further UM tender until a decision was reached on the extent of Ms. Relle's injuries from the 1999 accident, was not unreasonable or without probable cause. The trial court's finding to the contrary was clearly wrong. Accordingly, the failure of USAA to make further tender above the $60,000.00 given to Ms. Relle in medical payments and UM tenders, was not arbitrary, capricious or without probable cause, and the trial court's award of $6,548.37 in penalties and $36,000.00 in attorney fees must be reversed.

CONCLUSION
For the above reasons, we reverse that portion of the February 9, 2007 judgment awarding penalties and attorney fees. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally between Ms. Relle and USAA.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] USAA's policy provided UM coverage in the amount of $500,000.00 per person.
[2] Subsequent to the filing of her petition for damages on September 6, 2000, Ms. Relle filed an amended petition, on January 30, 2004, asserting that USAA arbitrarily, capriciously, and without probable cause failed to make a timely tender upon its receipt of satisfactory proof of loss pursuant to LSA-R.S. 22:658 and LSA-22:1220.
[3] Ms. Relle underwent two arthroscopic surgeries on her right knee, one on September 13, 2000, and the second on April 9, 2002.
[4] The penalty assessment amount of $6,548.37 was 10% of the difference between the amount tendered and the amount determined to be due and owing. See LSA-R.S. 22:658.
[5] We note that neither party has appealed the general damage award.
[6] Although Ms. Relle argues that she was capable of sitting, standing, or walking for a total of three hours in a workday, we find the trial court's interpretation of Dr. Watermeier's work capacity form to be reasonable.
[7] In Ms. Relle's pre-trial memorandum on this issue, she asserted entitlement, only, to the provisions of LSA-R.S. 22:658, stating that she was not pursuing the penalties provided under LSA-R.S. 22:1220.
[8] Ms. Relle's actual medical expenses were $58,528.00.
[9] Ms. Virginia H. Johnson, a litigation manager for USAA in charge of Ms. Relle's claim, testified by deposition that USAA did not take the workers' compensation policy defense into account when evaluating Ms. Relle's claim and instead focused on the causation issues.
[10] Ms. Relic had been involved in another automobile accident in November of 1997. In that accident, Ms. Relle was a front-seat passenger in a vehicle that was rear-ended. She was diagnosed with post-concussion syndrome and acute cervical strain.
[11] Additionally, USAA had obtained surveillance of Ms. Relle, which, while inconclusive, did not indicate any limitations on Ms. Relle's activities. The surveillance was made after the last tender in August of 2002, and, according to Ms. Johnson, had an impact on USAA's decision to not make further tender.